## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        **Plaintiff(s),**

  **vs.**                                       **CIVIL NO.03-590 WDS/ACT**

DEBORAH RITTER AND THE ALL NEW, INC
F/K/A THE OLD HUE,

        **Defendant(s),**

DEBORAH RITTER AND THE ALL NEW, INC
A NEW MEXICO CORPORATION.

        **Third Party Plaintiff,**

**v.**

RAUL SERGIO AVILA, JOSEPH FEYAS
AND JOHN DOES 1-5,

        **Third Party Defendant**

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants Debbie Ritter and All New, Inc.'s Motion

for Partial Summary Judgment [Docket No. 111].   Although the original motion was styled a

"Motion for Partial Summary Judgment," counsel for Defendants clarified at oral argument that the

inclusion of the word "partial" in the caption was a typographical error.  The matter is fully briefed,

and oral argument was held on July 11, 2005.

This is a subrogation action in which Plaintiff, State Farm Mutual Automobile Insurance

Company (State Farm), is attempting to recover insurance proceeds it paid as a result of a fire that

occurred on July 20,2000.  State Farm insured a residential property in Santa Fe, New Mexico owned

by Barry and Arlene Bergman.  On the night of July 20, 2000 that property was extensively damaged

by fire.  State Farm paid approximately $1,150,000 to repair the damage to the home.

State Farm filed this action against Defendant Deborah Ritter and her business, All New, Inc.

The Bergman's had contracted with All New, Inc.[1] to re-oil the exterior wood on their home and to

clean and re-stain a portion of the front gate to the property.  The fire occurred during the course of

this work, and Plaintiff alleges that the fire was caused by spontaneous combustion of oil-soaked rags

that were negligently left on the Bergman's wooden portico by Avila and/or Feyas.  There is no

evidence of direct participation of Defendants in the placement of the rags.  The only allegations of

negligence on the part of Defendants arises from the actions of Avila and/or Feyas as will be

discussed below.

Defendants Ritter and All New, Inc. answered Plaintiff's complaint, denied negligence, and

filed a third party complaint naming Raul Sergio Avila and Joseph Feyas as third party defendants.

Ritter and All New identified Avila and Feyas as independent contractors who had been subcontracted

to perform work at the Bergman residence.  Ritter and All New alleged in their third party complaint

that if the fire had been started by the negligence of any worker, the fire was the result of the

negligence of Avila and/or Feyas.  Plaintiff was granted leave to amend its complaint to assert a direct

claim against Zurich Specialties London, Ltd[2].  However, Plaintiff never sought leave to amend the

---

[1]It appears that the Bergmans acted through their representative, Susie Landrum.  Ms.
Landrum sought and accepted a bid from Ms. Ritter.  At oral argument the parties represented
that there was no written contract, just a verbal agreement.

[2]Zurich Specialties London, Ltd. appears to have been the insurer of All New, Inc.

complaint to assert direct claims against either third party defendant for negligence.

Discovery has closed, and Defendants Ritter and All New have filed this motion for summary judgment, seeking a declaration that Mr. Avila and Mr. Feyas were independent contractors, that Ms. Ritter and All New, Inc. cannot be held liable for the negligence of either independent contractor, and that neither Ms. Ritter nor All New, Inc. breached a duty owed to the Bergmans.

The primary legal issue raised by this motion is whether All New can be held liable by the Plaintiff for the negligence, if any, of third party defendants Avila and Feyas.   In order for All New to be held liable for the actions of Avila and Feyas, All New has to have been the employer of Avila and Feyas, or has to have exerted "sufficient control" over the work of Avila and Feyas that it would be considered to be the employer of the two men.  *Celaya v. Hall*, 135 N.M. 115 (2004).  This is known as the "right to control" test.  On the other hand, if All New employed Avila and Feyas as independent contractors, All New would not be responsible for any damage caused by the negligence of either man.  *Scott v. Murphy Corporation*, 79 N.M. 697, 699 (1969).  It appears undisputed that All New was not the employer of Avila and Feyas in the traditional sense, i.e., neither man was on the payroll or received wages paid in conjunction with receipt of a W-4 form.  Accordingly, the issue is whether or not All New exercised "sufficient control" over the actions of Avila and Feyas such that All New should be held liable for any negligence on the part of the two men.

In determining whether workers should be considered employees or independent contractors, New Mexico law requires application of the "right to control" test in combination with the analysis set forth in the Restatement (Second) of Agency, § 220.  *Harger v. Structural Services, Inc.*, 121 N.M. 657, 664 (1996).  The Restatement suggests a number of considerations for determining whether an individual is acting as an employee or independent contractor, only one of which is the

3

degree of control the principal exercises over the details of the agent's work. *Restatement (Second) of Agency § 220(2)* (a-j). Other considerations include: 1) the type of occupation and whether it is usually performed without supervision; 2) the skill required for the occupation; 3) whether the employer supplies the instrumentalities or tools for the person doing the work; 4) the length of time the person is employed; 5) the method of payment, whether by time or job; 6) whether the work is part of the regular business of the employer; 7) whether the parties intended to create an employment relationship; and 8) whether the principal is engaged in business. *Id.* A complete analysis may require an assessment not only of the relevant factors enumerated in the Restatement, but of the circumstances unique to the particular case. See *Harger,* 121 N.M. at 667.

The essential facts are not in dispute in this case. Ms. Landrum and Ms. Ritter negotiated a price for the entirety of the work at the Bergman residence. Ms. Ritter then asked Raul Avila, Joseph Feyas, and Burke Richardson if they would be willing to do certain of the work on the house for the lump-sum price that she offered them. Mr. Avila accepted Ms. Ritter's offer in part, agreeing to do the exterior maintenance and staining of woodwork, but refusing to clean and re-stain the gate to the property. Mr. Feyas was then given the contract for refinishing the gate. Mr. Avila was paid a lump-sum price for the portion of the work that he agreed to perform. Mr. Avila in turn hired his brother to do the preparation work at the house, supervised him, and decided how much to pay him.

Mr. Avila was never on All New's payroll. He received a 1099 tax form from All New and All New did not withhold taxes from Avila's checks. Mr. Avila carried his own liability insurance and had his own tax identification number. Mr. Avila did painting work for persons other than Ms. Ritter and All New. Mr. Avila could turn down any job offers he received from All New, and he knew that weeks could pass between his completion of a job and his being offered another job by All New.

4

Similarly, Mr. Feyas was a contractor with a business license, and the principal in "Joseph Feyas Painting and Decorating."  Mr. Feyas had his own liability insurance.  Mr. Feyas considered himself to be an independent contractor, not an employee of All New, Inc. Mr. Feyas agreed to work on the front gate of the Bergman residence for a lump-sum payment.  He did not receive a paycheck from All New, Inc.  Mr. Feyas recognized that he could have turned down the job of refinishing the gate, and he controlled the means and details of the work to be performed on the gate[3].

Plaintiff points out that Ms. Ritter provided the stain used by Mr. Avila, along with supplies such as rags and brushes, and a ladder, and argues that this raises a factual question as to whether All New and Ms. Ritter retained the "right to control" Mr. Avila's work such that a jury must determine whether he should  be considered an employee of All New, or an independent contractor.  However, the Court finds that in this case the provision of simple material and supplies, and the possible provision of a ladder, standing alone, does not raise a genuine issue of material fact sufficient to defeat Defendants' motion for summary judgment. *Siemon v. AT&T Corp.,* 117 F.3d 1173 (10th Cir. 1997).  It is undisputed that the manner and method by which the woodwork was prepared and then stained was exclusively in the control of Mr. Avila.  This case does not present a situation where, for example, a contractor supplemented his employee workforce with leased employees and directly controlled the work of those employees.  To the contrary, as to Mr. Avila and Mr. Feyas, this scenario presents the quintessential contractor/subcontractor relationship that is well known in the construction trades.

---

[3]Additionally, the parties acknowledged at oral argument that there were no facts indicating that Mr. Feyas had worked with the oil-soaked rags in question.  Discovery had revealed that Mr. Avila was the individual who had worked with the product suspected of being the source of spontaneous combustion.

In addition, Plaintiff argues that Ms. Ritter and All New, Inc. knew that Mr. Avila did not have a valid contractor's license, and that therefore All New is responsible for any damage caused by Mr. Avila's negligence.   The Construction Industries Licensing Act, N.M. Stat. Ann. §§ 60-13-1 to -57 (1978), requires contractors to have a valid license at the time they enter into a contract.   An unlicensed contractor is prohibited from receiving compensation for his work, and must disgorge any payments received pursuant to the contract.   There is no provision of the Construction Industries Licensing Act that changes New Mexico law regarding liability for damage caused by an independent contractor.   Accordingly, whether Mr. Avila had a valid contractor's license at the time he worked at the Bergman property is not relevant to the negligence issues presented in this motion.

Plaintiff also argues that painting under these circumstances is an inherently dangerous activity.   An exception to the general rule that an employer of an independent contractor is not liable for the negligence of the independent contractor arises where the work of the independent contractor is "inherently dangerous." *Saiz v. Belen School District*, 113 N.M. 387 (1992).   There is a three part test used in evaluating whether an employer should be held liable for the negligence of his independent contractor:   (1)  the activity poses an unusual and high risk of harm; (2)  there is a high probability of harm in the absence of special precautions; and (3)  the danger flows from the activity itself when carried out in its ordinary, expected way. *Enriquez v. Cohran,* 126 N.M. 196, 221-222 (Ct. App., 1998).  Plaintiff argues that the activity involved in this case, staining of woodwork, should be considered "inherently dangerous."

The Court finds that the staining activity at issue in this case is not inherently dangerous, and does not meet even one part of the three part test set forth above.   Notably, part three of the test requires that danger be present when the activity is carried out in its ordinary, expected way.   Here,

6

Plaintiff alleges that the damage resulted from a contractor *not* storing oil-soaked rags in the ordinary, expected way.  Furthermore, *any* construction activity that is performed improperly presents some risk of personal injury or property damage.  The fact that a poorly constructed wall might collapse, or an improperly installed plumbing system might leak, for example, does not lead to the conclusion that carpentry and plumbing are inherently dangerous activities.  The work to be performed by Mr. Avila and Mr. Feyas in this case was not inherently dangerous and does not provide the basis for an exception to the general rule of non-liability for the actions of independent contractors.

Plaintiff next argues that Defendants Ritter and All New, Inc. breached a non-delegable contractual duty owed to the Bergmans, citing *Clear v. Patterson*, 80 N.M. 654 (1969).  Defendants correctly point out that the complaint in this matter sounds directly in negligence, not breach of contract.  Notwithstanding that argument, Plaintiff's have not identified a contractual provision breached by Defendants.  In *Clear* the defendants had contracted to deliver a car wash "ready to operate."  The car wash required a sump to operate properly, defendant subcontracted the installation of the sump, and the independent contractor who installed the sump did so improperly.  The court found that defendant had a non-delegable contractual duty to provide an operating car wash, and could be held liable for economic damages under the contract even if the defective sump installation was performed by an independent contractor.  *Id.* at  657.

The instant case is distinguishable from *Clear* in that the record is devoid of any contractual terms allegedly breached by All New and/or Ms. Ritter.  The contract was verbal, and there is no evidence of *any* specific contractual promises made by Ms. Ritter, let alone a contractual promise that was breached.  Plaintiff is essentially arguing that the fact specific ruling of *Clear* should be extended to any and all contracts, without concern as to whether there was a specific term of the contract that

was breached.  The Court refuses to do so.

Plaintiff next argues that Ms. Ritter and All New, Inc. should be held liable for negligently hiring and training of Mr. Avila and Mr. Feyas.  However, Plaintiff has identified no facts in the record that would suggest that Ms. Ritter new or should have known at the time she hired Mr. Avila and Mr. Feyas that she was hiring incompetent independent contractors.  To the contrary, the facts of record make it clear that Ms. Ritter had frequently worked with both men, and had never had a problem resulting from incompetency.  There is simply no basis for Plaintiff's allegation that the two independent contractors were negligently hired.

Plaintiff's argument that the independent contractors were negligently trained by Ms. Ritter also fails.  Significantly, Plaintiff has identified no improper or negligent training conducted by Ms. Ritter or any employee of All New, Inc.  There is no evidence that Ms. Ritter trained either Mr. Avila or Mr. Feyas to leave oil-soaked rags on the wooden porch of the Bergman home.  To the contrary, there is uncontroverted testimony from both Mr. Avila and Mr. Feyas that they knew the proper procedures for storing oil-soaked rags, and were not relying on Ms. Ritter or any other employee of All New to instruct them on proper storage methods.  In this section of its brief, Plaintiff appears to be arguing that Ms. Ritter, as general contractor, should be held liable for *any* damage caused by the negligence of a subcontractor she hires.  However, that is not the law in New Mexico.

For the reasons set out above the Court finds that the motion for summary judgment is well taken and will be granted.

IT IS THEREFORE ORDERED that Defendants Debbie Ritter and All New, Inc.'s Motion for Partial Summary Judgment [Docket No. 111] is granted.  There being no further claims pending against Defendants, the claims of Plaintiff are dismissed.

8

**W. DANIEL SCHNEIDER**
**United States Magistrate Judge**